IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| Plaintiff-Respondent § | |
| § | CRIMINAL ACTION NO. H-01-867 |
| V. § | CIVIL ACTION NO. H-05-1147 |
| § | |
| RODNEY DAVIS, § | |
| § | |
| Defendant-Movant. § | |

**MEMORANDUM AND RECOMMENDATION**
**DENYING MOVANT'S § 2255 MOTION TO VACATE**
**SET ASIDE OR CORRECT SENTENCE**
**AND GRANTING THE UNITED STATES' MOTION**
**FOR SUMMARY JUDGMENT**

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Rodney Davis's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 81)[1], Movant's Memorandum in Support of Movant's § 2255 Motion to Vacate and Correct His Sentence (Document No. 82), the United States' Answer to Movant's Motion to Vacate Sentence Under 28 U.S.C. § 2255 and Motion for Summary Judgment (Document No. 85), and Movant's Reply to the United States' Answer and Motion for Summary Judgment (Document No. 86). After reviewing Movant Rodney Davis's Motion and Response, the United States' Answer and Motion for Summary Judgment, the record of the proceedings before the District Court in the underlying criminal case, and on appeal, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Movant Rodney Davis's § 2255 Motion to

---

[1] Davis's Motion to Vacate, Set Aside or Correct Sentence can be found at Document 1 in Civil Action H-05-1147 and at Document No. 81 in Criminal Action H-01-867. References hereafter will be to the Criminal Docket numbers unless otherwise indicated.

Vacate, Set Aside or Correct Sentence (Document No. 82) be DENIED and the United States' Motion for Summary Judgment (Document No. 85-2) be GRANTED.

## I.    Procedural History

Movant, Rodney Davis ("Davis"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is Davis' first attempt at § 2255 relief.

On November 26, 2001, Davis was charged with possession with intent to distribute more than five grams of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). (Document No. 1).[1] On January 31, 2003, Davis pled guilty to the indictment without the benefit of a written plea agreement. (Document No. 50, Transcript of Rearraignment Hearing, Document No. 73). At Davis' January 31, 2003, Rearraignment Hearing, the Court engaged in an extended colloquy to ensure that Davis understood the charges against him, the minimum and maximum penalties, the rights he was waiving, the factual basis of the plea, and the manner in which his sentence would be calculated. (Document No. 50, Document No. 73, pp. 5-13). In particular, with respect to the calculation of Davis' sentence, the following exchanges took place between Davis and the Court.

> The Court:  Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow to determine what the sentence will be in a criminal case. Have you and Mr. Goldsmith talked about how those guidelines may apply in your case?
>
> The Defendant:  Yes, ma'am.
>
> The Court:  Do you understand that this afternoon I don't know what your sentence will be?

---

[1] The penalty range for possession with intent to distribute five grams of more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B)(iii) is a mandatory minimum of five years and a maximum penalty of forty years.

The Defendant: Yes, ma'am.

The Court: And I won't know until after a probation officer has done an investigation of your case and has written a Presentence Report that will assist me in sentencing?

The Defendant: Yes, ma'am.

The Court: After the report has been written, you and Mr. Goldsmith will get a copy, Mr. Cook will get a copy, and each of you will have a chance to make any objections that you may have to that Presentence Report. Do you understand that?

The Defendant: Yes, ma'am.

The Court: And we will then have a sentencing hearing, and at that hearing I will rule on any objections that may be made to the report. I will also rule on any motions that may be made, recommendations that may be made or any other matters that might come to my attention that would have an impact on the sentence that you get. Do you understand that?

The Defendant: Yes, ma'am.

The Court: And at the conclusion of that sentencing hearing, I will then be in a position to determine if the guidelines apply in your case and how they apply and what your guideline sentence is or what your sentence is. Do you understand that?

The Defendant: Yes, ma'am.

The Court: Now, it could be that at the time I pronounce sentence, the sentence I give you is more severe than the one that you and Mr. Goldsmith might have estimated that you might get when you all were discussing how the guidelines might apply in your case. Do you understand that?

The Defendant: Yes, ma'am.

The Court: And if the sentence I give you is more severe than the one you are expecting to get, do you understand you will not be given a chance to withdraw your plea of guilty?

The Defendant: Yes, ma'am. (Document No. 73, pp. 5-8).

Prior to sentencing, a Pre-sentence Investigation Report ("PSR") was prepared. (Document No. 56).

Pursuant to the PSR, Davis' sentencing range was calculated as follows: (1) Because Davis pleaded

guilty to 21 U.S.C. § 841(a)(1) & (b)(1)(B)(iii), U.S.S.G. § 2D1.1 applied, and based on Davis' relevant conduct he was held responsible for 18.3 grams of cocaine base, which pursuant to U.S.S.G. § 2D1.1(C)(7) resulted in a base offense level of 26.  (2)  Because Davis timely notified the Government of his intention to plead guilty and because Davis demonstrated acceptance of responsibility,[2] pursuant to U.S.S.G. § 3E.1.1(a) and (b), his base offense level was reduced by 3 levels. (3) With an adjusted offense level of 23, and with a criminal history category of V, Davis had a guideline sentencing range of 85 to 105 months.  No objections to the PSR were filed prior to sentencing by Davis.  (Document No. 55, Sentencing Transcript Document No. 74, pp. 2-3). However, Davis objected[3] to certain unidentified portions of the PSR at his sentencing, held on April 25, 2003. (Document No. 74, p. 3).  Specifically, Davis objected to the weight of the contraband and its impact on the guideline scoring. (Document No. 74, p. 9).  Davis' objections were denied, and the court adopted the PSR as its own.  (Sentencing Transcript, p. 4).  In addition, Davis read a statement of acceptance of responsibility into the record. (Document No. 74, p. 9-10).  Davis was

---

[2] As to acceptance of responsibility, David submitted the following verbal statement: In August, Calvin Crews approached me saying he knew someone that wanted to buy some crack.  I asked Calvin how much the guy was looking for.  I left and bought some crack and brought it back.  Calvin arranged the sale between me and the undercover agent 15 rocks for $250.  The undercover agent told me to call him if I could get a whole cookie.

In September, I called the undercover agent and told him I could get a whole cookie. I checked to see how much it would cost.  We then arranged to meet so the undercover agent could buy the cookie for $750.  I had no idea the trouble I was getting into.  I would never do this again because it has hurt my family deeply.  I am very sorry this happened. (Document No. 56, ¶ 16).

[3] Davis made these objections directly to the court, and not through his counsel.  These objections are referred to as the "*pro se* objections" by Davis's counsel. (Document No. 74, p. 9).

sentenced to 90 months' imprisonment, to be followed by a five-year term of supervised release, and was ordered to pay a $100 special assessment.

Davis appealed to the Fifth Circuit Court of Appeals. On May 20, 2004, Davis's conviction was upheld by the Fifth Circuit, which held that Davis's guilty plea was knowing and voluntarily entered. *United States v. Davis*, 97 F. App'x 486 (5th Cir. 2004), (Document Nos. 79, 80).

On April 4, 2005, Davis filed this § 2255 motion (Document No. 82). The Government has filed an Answer and a Motion for Summary Judgment. (Document No. 85). Davis has responded to the Government's Motion for Summary Judgment. (Document No. 86).

## II.   Factual Background

Davis was charged with possession of more than five grams of cocaine base with intent to distribute. Davis' role in the offense was summarized in the PSR as follows:

> On August 22, 2001, a DEA Houston Field Office Mobile Enforcement Team Agent (undercover**)** received a telephone call . . . . The caller identified himself as Calvin (Crews). Calvin advised that he had a half cookie (street slang for crack cocaine) available for $250. Calvin asked the undercover agent where he was and how soon he could get back to the area. The undercover agent (UCA) advised Calvin he could be there in twenty minutes. Calvin told the UCA to meet him at the corner of Humble-Westfield and Kenswick, where all the construction truck [sic] were located.
>
> The UCA's [sic] drove to the above stated location when they received a second phone call . . . . The caller identified himself as Calvin who wanted to know where the UCA was located. The UCA explained he was at the construction site he had previously told him about. Calvin instructed the UCA to continue towards K-Mart and he would be standing near a church. The UCA overheard Calvin speaking to someone else in the background.
>
> The UCA's [sic] continued east bound on Humble-Westfield and observed Calvin Crews standing next to the Mt. Corinth United Methodist parking lot at the corner of Humble-Westfield and Borders Street. As the UCA's [sic] pulled into the parking lot, Calvin Crews approached the vehicle and advised he had placed the package in the wooded area. He instructed the UCA's [sic] to park the vehicle. The UCA told Crews he would stay in the parking lot while he got the package. Crews retreated into the wooded area down a narrow gravel road. A short time later, Crews emerged from the woods with another B/M (later identified as Rodney Davis).

The two subjects motioned for the UCA"s [sic] to come over to them. One UCA approached the subjects while the second UCA remained in the vehicle observing the transaction. Davis asked the UCA if he was cool. The UCA replied that he was and asked Davis what he had for him. Davis handed the UCA a clear plastic baggie with an unbroken quarter of a cookie. The UCA asked Davis how much he wanted for the cocaine. Davis told the UCA $250. The UCA explained the package was too light and that he would only pay $200. Davis agreed and the UCA handed him $200. Davis noticed the UCA had additional cash and wanted to know if the UCA would spend it with him. The UCA asked Davis what he had for another $50. Davis explained he only had six large rocks left, which he showed to the UCA. Davis told the UCA he could have two large rocks for $50. The UCA said he would only pay $40 for two large rocks. Davis agreed, but felt the UCA should pay Crews $10 for arranging the drug transaction. The UCA agreed and paid Crews $10.

The UCA asked Davis what his name was, while explaining they could continue to do business while he was in the area. Davis replied that his name was "T" and that they would be in touch, since Calvin had his cell number. Both Calvin and Davis turned around and walked down on the gravel road, through the woods, towards Bayou Ridge.

The UCA returned to the vehicle and both agents departed the area, west on Humble-Westfield. The agents returned to a predetermined meet location for processing and field testing. The crack cocaine contained in a clear plastic baggie field tested positive for the presence of cocaine base. The approximate gross weight was 27.3 grams. Lab tests were conclusive for the presence of cocaine base with a net weight of 2.0 grams.

On September 2, 2001, a DEA Houston Field Office Mobile Enforcement Team Agent (undercover) received a telephone call message . . . . The caller identified himself as "T", a friend of Calvin Crews . . . , that had met the UCA on the "Horseshoe" (street slang for the Bayou Ridge area in Humble, Texas). The caller advised he could do business with the UCA. The UCA called the subject back and left a message for "T" to call him. "T" returned the undercover agents call and advised he would make a much better deal than Teresa (LNU) or Calvin (Crews). The UCA advised "T" he could [sic] like to buy a whole cookie the following day, if he could get it at a good price. "T" advised the cookie would cost around $650, but would check on the price. "T" was later identified as Rodney Gerard Davis.

On September 4, 2001 Davis called the UCA to confirm he would be able to supply a whole cookie (crack cocaine), but the price would be $700. Davis said to call when the UCA was ready with the money and he would pick out a location to meet. The UCA later called Davis, who advised he would like to meet at Mt. Corinth United Methodist Church.

>At approximately 2:55 p.m., two UCA's [sic] drove to the Methodist Church, where Davis and another unknown B/M were waiting. Davis advised he would get the package and the two subjects retreated into a wooded area west of the church parking lot and retrieved a small plastic baggie from the ground. One UCA approached the subjects near the wooded area while a second UCA remained in the vehicle to observe the transaction. Davis asked the undercover agent if he was cool and handed the plastic baggie to the unknown B/M. The unknown B/M then handed the UCA a whole, unbroken cookie of crack cocaine contained in a clear plastic baggie. The UCA counted out $700 to the unknown B/M in official government funds. The UCA then advised "T" he would contact him on the next payday. Both Davis and the unknown B/M turned around and walked south on the gravel road, through the woods, towards Bayou Ridge.
>
>The UCA returned to the vehicle and both agents departed the area, west on Humble-Westfield. The agents returned to a predetermined meet location for processing and field testing. The whole, unbroken cookie of crack cocaine contained in a clear plastic baggie field tested positive for the presence of cocaine base. The approximate gross weight was 40.8 grams. Lab tests were conclusive for the presence of cocaine base weight of 16.3 grams.

(Document No. 56, ¶ 4-13).

### III.   Issues Presented

Davis raises three claims in this § 2255 proceeding:

Ground One: Davis' guilty plea was not knowingly and voluntarily entered because it was not made with the understanding of the nature of the charge and the consequences of the plea, specifically that Davis was being charged with possession of 16.3 grams of cocaine.

Ground Two: Davis' counsel was ineffective because he failed to inform Davis that he was pleading guilty to possession of a total of 18.3 grams of cocaine, and he failed to object to an 16.3 grams of cocaine to be used to determine Davis' sentencing.

Ground Three: Davis' Sixth Amendment rights were violated by sentencing him under the United States Sentencing Guidelines because the sentence was based on factual findings not admitted to by Davis or proven to a jury beyond a reasonable doubt.

### IV.   Discussion

Pursuant to 28 U.S.C. § 2255, a federal prisoner may challenge his conviction on the basis that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of

the maximum authorized by law, or is otherwise subject to collateral attack." Motions brought pursuant to § 2255 are reserved for claims of constitutional or jurisdictional significance. *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981); *Limon-Gonzalez v. United States*, 499 F.2d 936, 937 (5th Cir. 1974).

When claims of constitutional or jurisdictional import are not raised on direct appeal, the claims are procedurally defaulted, and can only be considered in a § 2255 proceeding if a movant can show both cause for his failure to raise his claims on appeal, and actual prejudice resulting from the alleged errors. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) ("[A] defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both cause for his procedural default and actual prejudice due to any such errors."); *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) ("When raising issues of jurisdictional or constitutional magnitude for the first time on collateral review, a defendant ordinarily must show both cause for his procedural default and actual prejudice resulting from the error."); *United States v. Acklen*, 47 F.3d 739, 741-42 (5th Cir. 1995) ("Because a challenge under section 2255 may not do service of an appeal, a movant may not raise constitutional or jurisdictional issues for the first time on collateral review without establishing both cause for his procedural default and actual prejudice resulting from the error."); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) ("A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude, and may not raise an issue for the first time on collateral review without showing both cause for his procedural default, and actual prejudice resulting from the error."). Alternatively, procedurally defaulted claims can be considered for the first time in a § 2255 proceeding if the movant can show that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to

raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause or actual prejudice, or that he is actually innocent."). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. Simply put, to overcome a procedural default based on actual innocence, the movant "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id*.

### A. Involuntary Guilty Plea

Davis claims that he was unaware that he was pleading guilty to possession to a total of 18.3 grams of cocaine base with the intent to distribute. Davis' explanation for this alleged misunderstanding is that he believed that he was being charged with possession of the cocaine found in the first controlled purchase of drugs by the undercover agents ("UCAs"), purchased on August 22, 2001, which contained 2 grams of cocaine base. Davis contends that he was never in actual possession of the "whole cookie," purchased by the UCAs on September 4, 2001, which contained 16.3 grams of cocaine.

The Fifth Circuit considered this issue on Davis's direct appeal, stating:

> Davis argues on appeal that his denial at rearraignment of having possessed the drugs indicates that his guilty plea was not made knowingly and voluntarily. However, aiding and abetting "is an alternative charge in every count, whether explicit or implicit, and the rule is well-established, both in this circuit and others, that one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense." *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971). Davis admitted facts sufficient to support a conviction as an aider and abettor. *See* 18 U.S.C. § 2(a); *United States v. Sorrells*, 145 F.3d 744, 753 (5th Cir. 1998). Although the trial court did not inform Davis of the elements of aiding and abetting, his substantial rights were not violated because it is unlikely that his knowledge of the elements of aiding and abetting would have affected his willingness to plead guilty. *See United States v. Johnson*, 1 F.3d 296, 302 (5th Cir. 1993) (en banc). Therefore, the district court did not commit plain error and its decision is AFFIRMED.

*United States v. Davis*, 97 F. App'x 486, 487 (5th Cir. 2004), (Document No. 80).

"It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)) (holding that the district court did not err in refusing to entertain the movant's § 2255 claim because the issue was denied on direct appeal). Because Davis' claim was denied on direct appeal, the claim is procedurally barred and no relief is available under §2255.

### B.   Ineffective Assistance of Counsel

Davis claims that his trial counsel, R. Christopher Goldsmith, was ineffective because he failed to inform Davis that he was pleading guilty to possession of the 16.3 grams of cocaine base purchased on September 4, 2001. Davis contends that he believed he was pleading guilty to possession to the cocaine found in the initial controlled purchase by the under cover agents ("UCA") on August 22, 2001, which amounted to only two grams of cocaine base. Davis contends that Mr. Goldsmith failed to advise him about relevant conduct under the Guidelines. According to Davis, he was unaware about the quantity of crack cocaine he would be held accountable for in calculating his base offense level. He also alleges that his counsel further failed to object to the PSR concerning the 16.3 grams of cocaine used to calculate Davis's sentence. In addition, Davis argues that this issue should have been raised by his appellate counsel, John Friesell, as was requested by Davis. This is the basis of Davis' ineffective assistance of appellate counsel claim.

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Strickland*, 466 U.S. at 687. Deficiency is judged by an objective

reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id*. at 694-95. Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993) (citing *Strickland*). To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland,* a petitioner must be able to establish that absent his counsel's deficient performance, the result of his trial could have been different. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th

Cir. 1983), *cert. denied,* 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland,* 466 U.S. at 690. "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). Conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

As for *Strickland's* prejudice prong, in the context of an ineffective assistance of appellate counsel claim, "[p]rejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina,* 262 F.3d 472, 474 (5th Cir. 2001). When the claim of ineffective assistance of appellate counsel is based on counsel's failure to raise a claim or issue on appeal, prejudice is established if it is shown "that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue" and "that the attorney's deficient performance led to a fundamentally unfair and unreliable result." *Id*. at 474-75.

"Solemn declarations in open court carry a presumption of verity, forming a formidable barrier in any subsequent collateral proceeding." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). However, a defendant such as Davis may obtain habeas relief on the basis of misrepresentations as to what a sentence will be, notwithstanding statements made in open court, by showing the exact terms of the alleged promise, when, where and by whom the promise was made, and the precise identity of an eyewitness

to the promise. *Cervantes*, 132 F.3d at 1110 (citing *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989)). Consequently, absent independent evidence that disputes Davis' own testimony[4] which he gave during his Rearraignment, his ineffective assistance of counsel claims based on counsel's erroneous estimate of his sentencing exposure fails. Here, because Davis has failed to come forward with credible, independent evidence, which would dispute his sworn statements at his Rearraignment hearing, his claims fail.

Moreover, regardless of whether Davis' attorney knew of, or discussed with him, his relevant conduct and the application and effect of relevant conduct in calculating his sentence, given Davis' sworn statements at his Rearraignment hearing, which are entitled to the presumption of truthfulness, Davis has not shown that he was unaware that he could be sentenced to more than five years. For example, at Davis' Rearraignment Hearing, he acknowledged, under oath, that he could receive a sentence between five and forty years. In addition, Davis stated that no representations or promises had been made as to his sentence, that *only* the Court would determine his sentence he would receive after receiving and reviewing the PSR and objections made by Davis to the PSR, and that he could not withdraw his plea if his sentence was more severe than he expected. Davis repeatedly

---

[4] As part of his § 2255 motion, Davis submitted an affidavit in which he states in pertinent part:
> I fully accept responsibility for the sale of 2 grams of crack cocaine to DEA agent Dwain Coker on August 22, 2001. But on September 2, 2001, I did not sell or possess nor did I sell the additional 16.3 [grams] of crack cocaine to DEA agent Dwain Coker. An unidentified black male possessed and sold the crack cocaine to DEA Agent Dwain Coker. Agent Coker then paid $700 to the unidentified. I Rodney Davis was only present at the scene and know what was going on.
>
> If I had been properly advised by attorney, Mr. Goldsmith of the consequences of my guilty plea, I would have insisted on trial on that "enhancement" or "element" to require the government to prove that I possessed and distributed the additional 16.3 grams of crack cocaine beyond proof of a reasonable doubt. (Document No. 81).

acknowledged that he understood that no one could tell him with specificity the length of sentence which would be imposed by the Court and that his sentence would be determined by the Judge *only*. As such, even if Davis' counsel had erroneously represented that he would receive a sentence of five years by entering into the plea agreement, Davis, nonetheless, was aware when he entered the Plea Agreement and at the time of his Rearraignment hearing, that his sentencing exposure was between five and forty years.

Given the exchange between Davis and the Court at his January 31, 2003, Rearraignment Hearing, which leaves no doubt that Davis knew he faced up to forty years, and the explanation of the sentencing process, and in particular, that his sentence would not be known until the sentencing hearing, Davis has not shown prejudice within the meaning of *Strickland*. Davis has failed to demonstrate that his guilty plea was not knowing, voluntary, and intelligent, and has likewise failed to overcome the presumption under *Strickland* that "counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. (quotations omitted). Even if counsel had predicted a much lesser sentence, Davis' reliance on that sentencing estimate would have been unreasonable given the numerous warnings he received at his Rearraignment that the maximum sentence for count to which he was pleading guilty to was forty years. By pleading guilty, Davis had the potential for a less harsh sentence given that there was a chance for a reduction for acceptance of responsibility. In contrast, had Davis gone to trial, it is highly likely that the jury would have found him guilty, based on the evidence, and there would have been no chance of a reduction for acceptance of responsibility.

As to Davis' claim that counsel should have objected to the PSR, given the DEA lab test reports which established the weight of the crack cocaine, counsel had no legal or factual basis to

object to the PSR. As such, counsel was not ineffective for failing to object to the PSR. (Document No. 56, ¶ 9, 13) & Document No. 74, pp. 5-9). *See Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (holding that an attorney cannot be judged deficient for his failure to raise a "frivolous" issue)

Finally, as to Davis' claim that he requested that this issue be included on appeal, but that his appeals counsel ignored his requests, given that the record shows that there was no legal or factual basis to support Davis' proposed claims, his ineffective assistance of appellate counsel claim fails. *See Green v. Johnson*, 160 F.3d 1029, 1043 (5th cir. 1998) ("[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available.").

In conclusion, Davis has offered no proof as to how his trial or appellate counsel's performance was objectively deficient, or proof that such deficient performances prejudiced him in any way. *See Strickland*, 466 U.S. at 687. Therefore, no relief is available under § 2255 on the ineffective assistance of counsel claims.

    **C.**    ***Blakely/Booker* Claim**

Davis argues that the district court's sentencing determination is contrary to the Supreme Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker,* 543 U.S.220 (2005) because the Court, and not a jury, enhanced his sentence. In *Blakely*, the Supreme Court invalidated the State of Washington's sentencing scheme, whereby a judge could possibly sentence a defendant to a punishment beyond a statutory range on the basis of judicially determined facts. *Id.* at 2538. In doing so, the Supreme Court applied the rule in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), which requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a

jury, and proved beyond a reasonable doubt." The Supreme Court in *Blakely* expressly declined to state whether its decision applied to the Federal Sentencing Guidelines. *Id.*

The Supreme Court, in its intervening decision, *United States v. Booker,* 543 U.S. 220 (2005), extended its holding in *Blakely* to the Federal Sentencing Guidelines, and concluded that there was "no distinction of constitutional significance between the Federal Sentencing Guidelines" and the state sentencing scheme at issue in *Blakely* and, in keeping with its earlier decision in *Apprendi*, stated: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 244. To remedy the guidelines' Sixth Amendment problem, the Supreme Court severed and excised 18 U.S.C. § 3553(b)(1), which required mandatory application of the guidelines. *Id.* at 244-45, 260. As a consequence, the guidelines are now advisory in all cases. *Id.* at 245. Because *Blakely* and *Booker* were decided after Davis' conviction in the instant case became final, it must be determined as an initial matter whether *Blakely/Booker* should be retrospectively applied. The Supreme Court has not stated whether the rule announced in *Blakely* and *Booker* applies retroactively to cases on collateral review. However, the Fifth Circuit addressed this issue as to initial § 2255 motions, and has concluded that *Booker* does not apply retroactively to an initial § 2255 motion. *United States v. Gentry,* 432 F.3d 600 (5th Cir. 2005). Because *Booker* does not apply retroactively in initial § 2255 proceedings, Davis is not entitled to relief under *Blakely/Booker,* and no relief under § 2255 is available for the instant claim.

V.     **Conclusion**

Based on the foregoing, it is

RECOMMENDED, that Movant Rodney Davis' § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 81) be DENIED, the Government's Answer and Motion for Summary Judgment (Document No. 85) be GRANTED, and this § 2255 proceeding be DISMISSED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 15th day of September, 2006.

Frances H. Stacy
United States Magistrate Judge